IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Altariq Khalil Williams, ) | C/A No. 0:14-1795-BHH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Altariq Khalil Williams, brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### SOCIAL SECURITY DISABILITY FOR MINORS[1]

An individual under the age of eighteen is considered disabled under the Social Security Act if that child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

---

[1] Although Williams is currently over the age of 18, he was under the age of 18 during the applicable time period—from his application date through the date of the ALJ's decision. Therefore, Williams's appeal is properly reviewed under the disability framework for minors.

Page 1 of  14



§ 1382c(a)(3)(C)(i); see also 20 C.F.R. § 416.906. To determine whether a child is disabled, the regulations require the ALJ to consider, in sequence:

(1) whether the child is engaged in substantial gainful activity;

(2) whether the child has a "severe" impairment; and

(3) whether the child has an impairment that meets, medically equals, or functionally equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled.

20 C.F.R. § 416.924(b)-(d).

To assess functional equivalence, the Commissioner will consider the child's level of function in six domains, which "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. Id. A child's impairments or combination of impairments functionally equal the Listings when they result either in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). Generally, the Commissioner will find that a child has a "marked" limitation in a domain when the child's impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). " 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme,' " and may arise when several activities are limited, or when only one is limited. 20 C.F.R. § 416.926a(e)(2)(i). Generally, the Commissioner will find that the child has an "extreme" limitation in a domain when the claimant's impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R.

§ 416.926a(e)(3)(i). " 'Extreme' limitation also means a limitation that is 'more than marked,' " and may arise when several activities are limited or when one is limited. Id. Although "extreme" limitation is the rating given to the worst limitations, it does not necessarily mean a total lack or loss of ability to function. Id.

### ADMINISTRATIVE PROCEEDINGS

In August 2010, Williams's mother applied for SSI on her minor son's behalf. Williams's application was denied initially and upon reconsideration, and Williams's mother requested a hearing before an administrative law judge ("ALJ"). A hearing was held on November 26, 2012 at which Williams and his mother appeared and testified. Williams and his mother were represented at the hearing by Laura P. Valtorta, Esquire. The ALJ issued a decision on January 22, 2013 denying benefits and concluding that Williams was not disabled. (Tr. 10-22.)

Williams was born in 1995 and was fourteen years old on August 16, 2010, the date the SSI application was filed on his behalf. (Tr. 162.) Williams's mother alleges that Williams became disabled July 30, 2010 due to a learning disability. (Tr. 166.)

In applying the three-step sequential process, the ALJ found that Williams had not engaged in substantial gainful activity since August 16, 2010—the application date. The ALJ also determined that Williams's borderline intellectual functioning, learning disorder, and attention deficit hyperactivity disorder ("ADHD") were severe impairments. However, the ALJ found that Williams did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"), or that functionally equaled the severity of the Listings. Therefore, the ALJ found that Williams had not been disabled since August 16, 2010, the date the application was filed.



The Appeals Council denied Williams's request for review on March 4, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Williams's brief fails to indicate specific issues for this appeal. However, as summarized by the Commissioner, Williams appears to present the following issues for this judicial review:

1.      Whether Plaintiff meets Listing 112.05(D) based on his full-scale IQ score.

2.      Whether substantial evidence supports the ALJ's finding that Plaintiff had less-than-marked limitations in attending and completing tasks.



    3.    Whether the ALJ accounted for Plaintiff's limitations in his literacy skills.

(Def.'s Br., ECF No. 13.)

## DISCUSSION

**A.    Listing 112.05(D)**

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the listing of that impairment. 20 C.F.R. § 416.925(d); 20 C.F.R. § 416.924(e) (indicating that § 416.925 explains whether an impairment meets a listing); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment is disabling at Step Three); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (same).

In considering whether Williams had an impairment of combination of impairments that met or medically equaled one of the Listings, the ALJ found as follows:

> Despite the claimant's combined impairments, the medical evidence do[es] not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. No state agency, reviewer, consultant, or examiner has concluded that the claimant has an impairment or combination of impairments severe enough to meet or equal a listing. No subsequent evidence has been submitted that would alter the previous conclusions that the claimant has no impairments severe enough to meet or equal a listing. No treating physician has credibly concluded that the claimant has an impairment or combination thereof severe enough to meet or equal a listing.

(Tr. 13.)

Williams appears to argue that the ALJ erred in failing to find that he met the requirements of Listing 112.05(D) because the evidence shows that Williams "has consistently scored between 67 and 75 on his full-scale IQ scores." (Pl.'s Br. at 1, ECF No. 12 at 1.) Williams specifically points to a March 9, 2011 full scale IQ score of 67. Williams argues that his score combined with his problems attending to and completing tasks meets the requirements of Listing 112.05(D).

Listing 112.05 is included under the section dealing with "Mental Disorders" and sets forth the following requirements:

> 112.05 Mental Retardation:[2] Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied. . . .
>
> D.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function . . . .

20 C.F.R. pt. 404, subpart P, app. 1, § 112.05. Therefore, in determining that a claimant meets Listing 112.05(D) an ALJ must find that the claimant meets four requirements—two in the introductory paragraph (significantly subaverage general intellectual functioning and deficits in adaptive functioning) and two in subsection D (a valid IQ score between 60 and 70 and a physical or other mental impairment imposing an additional and significant limitation of function). See Barnett v. Comm'r of Soc. Sec., 573 F. App'x 461, 462-63 (6th Cir. 2014); cf. Hancock v. Astrue,

---

[2] The court notes that effective September 3, 2013—subsequent to the date of the ALJ's decision—the Social Security Administration replaced the term "Mental Retardation" with "Intellectual Disability" in Listing 112.05. See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013). However, the substance of the Listing has not changed.



667 F.3d 470, 473 (4th Cir. 2012) (explaining with regard to Listing 12.05 that the claimant must satisfy the introductory paragraph as well as the requirements in one of the subsections).

As an initial matter, Williams appears to have misinterpreted the findings reported by Dr. Stephanie B. Boyd from a March 9, 2011 consultative examination. Although Dr. Boyd noted that Williams's sum of scaled scores under the WISC-IV (Wechsler Intelligence Scale for Children–Fourth Edition) was 67, the report clearly states in two places that Williams's full scale IQ from this examination was 75. (Tr. 226.) Further, Dr. Boyd indicated that there was a 95% chance that Williams's true full scale IQ score fell between 71-81. (Id.) The ALJ specifically discussed the findings from this examination in her decision, including stating that Williams was "administered the WISC-IV battery of tests, where he obtained a full scale IQ score of 75, placing him in the fifth (5th) percentile or borderline range of intellectual functioning." (Tr. 15.)

Moreover, Williams fails to provide any basis for his assertion that he "consistently scored between 67 and 75 on his full-scale IQ scores." (Pl.'s Br. at 1, ECF No. 12 at 1.) To the extent that Williams is relying on earlier IQ tests, § 112.00(10) provides that "IQ test results must [] be sufficiently current for accurate assessment under 112.05" and that "IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above." 20 C.F.R. pt. 404, subpart P, app. 1, § 112.00(10). Williams has not directed the court to any other sufficiently current IQ test results under this standard. Furthermore, the ALJ acknowledged prior IQ test scores, observing that in 2008 Williams's full scale IQ score was 75 and in 2003 Williams had an IQ score in the mid-to-high 80s. (Tr. 14, 16.) Therefore, Williams has failed to demonstrate any error by the ALJ in failing to find that he met Listing 112.05(D) based on his full scale IQ scores.

Additionally, even if Williams could satisfy the requirement of a valid IQ score between 60 and 70,[3] he has failed to present any argument that he meets the remaining three requirements of Listing 112.05(D). These requirements include: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) a physical or other mental impairment imposing an additional and significant limitation of function. In fact, the evidence of record reveals no indication that he has an intellectual disability or mental retardation; rather, for example, Dr. Boyd indicated borderline range of intellectual functioning and a Global Assessment of Functioning ("GAF") score of 65.[4] (Tr. 15, 226-27); see Barnett, 573 F. App'x at 463 (indicating that because no psychologist or professional had diagnosed the claimant as intellectually disabled but, instead, found that he fell within the borderline and not "significantly subaverage" range, substantial evidence supports the ALJ's finding that the claimant's impairments did not meet or medically equal the criteria of Listing 112.05(D)). Moreover, Williams has not indicated any deficits in adaptive functioning such that he would meet Listing 112.05(D). Finally, as observed by the ALJ, there is no opinion evidence within the record suggesting that Williams meets the requirements of this

---

[3] Although not argued by Williams, Dr. Boyd appears to have found that Williams's verbal comprehension index score was 69. (Tr. 226.)

[4] With regard to GAF scores, the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33; see also Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009) ("Plaintiff's GAF score is only a snapshot in time, and not indicative of [his] long term level of functioning."). According to the DSM-IV, a GAF score between 61 and 70 may reflect "[s]ome mild symptoms . . . or difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, [and] has some meaningful interpersonal relationships." DSM-IV at 34. However, the court observes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF. Am. Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V").



Listing. Therefore, Williams has failed to demonstrate that the ALJ's determination that Williams did not have an impairment or combination of impairments that met or medically equaled one of the Listings was unsupported by substantial evidence or controlled by an error of law.

**B.     Functional Equivalence**

As stated above, at Step Three a claimant is disabled if his impairment(s) functionally equals a Listing. To assess functional equivalence, the Commissioner will consider the child's level of function in six domains, which "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). For a child's impairments to functionally equal the Listings, they must result in either "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The ALJ found that Williams had marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks and interacting and relating with others, and no limitation in the remaining domains. Williams challenges the ALJ's findings with regard to the domain of attending and completing tasks. See 20 C.F.R. § 416.926a(b).

The ALJ explained that "[t]his domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities." (Tr. 17.) The ALJ also observed that this domain "refers to a child's ability to avoid impulsive thinking and his ability to prioritize comp[l]eting tasks and manage his time." (Id.) The ALJ explained that

> an adolescent without an impairment should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects. The child should also be able to organize his materials and to plan his time in order to complete school tasks and assignments. In anticipation of entering the workplace,



> the child should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). The child should also learn to apply these skills in practical ways that will help him enter the workplace after finishing school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer). The child should be able to plan ahead for future activities and begin realistic occupational planning (20 CFR 416.926a(g)(2)(v) and SSR 09-3p).

(Tr. 17-18.) The ALJ noted the following examples of actions illustrating limitations in this domain: being easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; being slow to focus on, or failing to complete, activities of interest (e.g., games or art projects); repeatedly becoming side-tracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, including ones he is capable of completing; requiring extra supervision to remain engaged in an activity; or being unable to plan, manage time, or organize self in order to complete assignments or chores. (Tr. 18.)

In this case, the ALJ found that the claimant had less than marked limitation in attending and completing tasks. Specifically, the ALJ observed that

> [t]he claimant's mother testified that the claimant needs reminders with his hygiene needs and with help around the house. This is consistent with the evidence found in the numerous IEP reports, which indicate that he gets easily distracted and tends to get out of focus. However, he has shown some progress when working in small group settings, when not under the influence of older peers, and his reading has improved when it is an interesting subject for him. He does not always remember previously learned concepts and how to apply them, but he can be easily redirected and tends to perform better (Ex.B9F/B10F).

(Tr 18.) The ALJ found that the above observations were consistent with less than marked limitation in this domain.

Williams argues that the evidence reveals that he was at risk for hyperactivity and suffered from attention deficit disorder. Williams also points to Dr. Boyd's consultative examination, which



included diagnoses of attention deficit hyperactivity disorder, predominately inattentive type; learning disorder NOS; borderline intellectual functioning; and limited intellectual functioning, poor academic performance. (Tr. 227.) Williams also appears to rely on the following excerpt from Dr. Boyd's assessment and summary to support his assertion of ALJ error:

> Al'Tariq has a history of learning problems including difficulties with reading comprehension and information processing. The results of this current assessment of intellectual functioning are consistent with the findings of previous psychological evaluation conducted by school psychologists. The results of previous assessments indicated measured IQ at 68 and 75, scores that represent extremely low to borderline abilities, respectively. Verbal comprehension problems appear to be a significant weakness.

(Id.) Finally, Williams argues that the ALJ failed to consider the testimony of Williams's mother indicating that "she fears her son will be unemployable because he cannot read instructions." (Pl.'s Br. at 3, ECF No. 12 at 3.)

Upon review of the record and the ALJ's decision, the court concludes that Williams has failed to demonstrate that the ALJ's findings were unsupported by substantial evidence. While Williams points to selective pieces of evidence that he contends support additional limitations, the court finds that the ALJ's decision is comfortably within the bounds of substantial evidence. See 20 C.F.R. § 416.926a(e)(2)(i) (indicating that generally, the Commissioner will find that a child has a "marked" limitation in a domain when the child's impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities). As quoted above, the ALJ specifically observed that Williams's mother testified that Williams needs reminders for his hygiene needs and to assist around the house, which was consistent with IEP reports indicating that Williams gets easily distracted and tends to get out of focus. (Tr. 18, 243, 258.) However, the ALJ also observed that Williams "has shown some progress when working in

small group settings, when not under the influence of older peers, and his reading has improved when it is an interesting subject for him. He does not always remember previously learned concepts and how to apply them, but he can be easily redirected and tends to perform better." (Tr. 18, 243; see also Tr. 243 (indicating that Williams "CAN do better work than he does much of the time;" that he enjoys math and grasps math concepts relatively easily and "uses a calculator very efficiently")). Moreover, the ALJ's decision clearly reflects that she considered the issues raised by Williams that he believes support additional limitations.[5] (See, e.g., Tr. 14-15, 17.) Accordingly, Williams has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

**C.     Functionally Illiterate**

Finally, Williams argues that the ALJ erred because the evidence demonstrates that he is functionally illiterate, arguing that examinations and schools records indicate that he reads at a second- or third-grade level. Williams also points to his mother's testimony that he is unable to

---

[5] The court notes that the remainder of the quoted section from Dr. Boyd's assessment and summary also includes a statement that "[i]ntellectually, [Williams] has the ability to manage simple and repetitive tasks." (Tr. 227.)



drive and count change. Therefore, Williams argues that an adult at this level of cognitive functioning cannot be expected to work.

It is unclear how this argument renders the ALJ's decision with regard to Williams's application unsupported by substantial evidence or controlled by an error of law. As noted above, although Williams is currently over the age of 18, he was under the age of 18 during the applicable time period—from his application date through the date of the ALJ's decision. Therefore, Williams's appeal is properly reviewed under the disability framework for minors. To the extent that Williams's arguments are based on an assertion that he is entitled to adult disability benefits, such an argument is misplaced. Moreover, the ALJ credited evidence regarding Williams's reading difficulties and found that he had marked limitations in acquiring and using information, in part based on findings that Williams performed below his grade level in reading and had below-average comprehension skills. (Tr. 17.)

## RECOMMENDATION

For the foregoing reasons, the court finds that Williams has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

April 13, 2015  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).